UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CLEARING CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>FINANCIAL AND ENERGY EXCHANGE LIMITED,<br><br>    Defendant. | No. 09 CV 5383<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND[1]**

In 2006, Defendant Financial and Energy Exchange Limited ("FEX"), an Australian public company with its principal business in Sydney, had begun building the infrastructure for the FEX Exchange, a commodities and energy futures and options exchange also based in Sydney. Australian law requires such an infrastructure to include clearing and settlement services for the listed products. FEX decided to out-source these services and contacted Plaintiff The Clearing Corporation ("CCorp"), a derivatives clearing organization that provides clearing and settlement services for futures markets across the United States. CCorp is a Delaware corporation, with its principal place of business in Chicago, Illinois.

FEX needed a partner who could "provide the necessary regulatory, technological, and operational infrastructure to allow the FEX Exchange to function properly[,]" and who could obtain the necessary licenses, ensure "an operating platform capable of receiving and processing

---

[1] A detailed statement of facts is also contained in my previous ruling on Defendant's motion to dismiss. *The Clearing Corp. v. Fin. & Energy Exch. Ltd.*, No. 09 cv 5383, docket entry 25 (Feb. 18, 2010).

data from FEX," and provide infrastructure that could accommodate several different time zones. Beginning in 2006, CCorp conducted a preliminary design study, funded by FEX. FEX ultimately chose CCorp as its clearing house partner, and in October 2007, the parties executed a Clearing Services Agreement ("CSA"). According to FEX, it relied upon three key criteria in choosing CCorp as a clearing partner: (1) CCorp's independence; (2) "CCorp's operational capabilities and ability to meet FEX's operational requirements;" and (3) the costs of CCorp's services.

In its counterclaim, FEX alleges that CCorp was incapable of delivering the services FEX required, and that prior to executing the agreement CCorp made several false representations to FEX. The representations include several statements that CCorp could meet FEX's operational and independence requirements, would work to satisfy FEX's needs, and would "apply for an Australian Clearing & Settlement Facility (C&SF) License to clear the FEX market[.]" But, according to FEX, at the time CCorp made these statements, it was planning to restructure its business and shift its focus away from the clearing and settlement services it was contracted by FEX to provide. FEX alleges that as early as 2006, CCorp was planning this restructuring, and that just one month after the parties executed the CSA, the restructuring was announced. Ultimately, IntercontinentalExchange ("ICE") purchased CCorp, which stripped CCorp of its independence.

In its counterclaim against CCorp, FEX alleges Fraudulent Misrepresentation (Count I), and Breach of Contract (Count II), Unjust Enrichment (Count III), and Violations of the Illinois Deceptive Trade Practices Act (Count IV). FEX seeks damages, as well as declaratory relief

2

(Count V). CCorp now moves to dismiss Counts I and IV, as well as to strike FEX's affirmative defense based on fraud/fraudulent concealment.

## II. STANDARD OF REVIEW

A Motion to Dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir.1998). I must take all facts alleged in Plaintiff's complaint as true and draw all reasonable inferences from those facts in favor of Plaintiff. *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir.1992). Plaintiff, for its part, must do more than solely recite the elements for a violation; it must plead with sufficient particularity so that their right to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead its facts so that, when accepted as true, they show the plausibility of its claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plaintiff must do more than plead facts that are "consistent with Defendants' liability" because that only shows the possibility, not the plausibility, of its entitlement to relief. *Id.* (internal quotations omitted).

Allegations of fraud must conform to a heightened pleading standard set forth by Federal Rule of Civil Procedure 9(b) and require that Plaintiff plead all averments of fraud with particularity. Although states of mind may be pleaded in general terms, Plaintiff must state "with particularity," "the who, what, when, and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

3

## III. DISCUSSION

### A. Count I - Fraudulent Misrepresentation

A claim for fraud must include the following elements: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induced the plaintiff to act; (4) plaintiff's reasonable reliance on the statement; and (5) plaintiff's damages resulting from reliance upon the truth of the statement. *Tricontinental Indus. v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (internal citations omitted); *Chicago Export Packing Co. v. Teledyne Industries, Inc.*, 566 N.E.2d 326, 329 (Ill. App. Ct. 1990). CCorp moves to dismiss Count I, arguing that: (1) its failure to perform is not a false statement of fact; and (2) CCorp's statements regarding independence were not false statements. For the following reasons CCorp's motion to dismiss Count I is denied.

CCorp argues that the statements at issue are not false statements of material fact, and that statements that CCorp was able to meet performance requirements, had the capacity to do so, and was confident in its ability to do are mere "puffery" or promises and are not actionable as fraud. In order for a statement to be actionable in fraud, "it must state a past or present fact; and expressions of opinions, expectations, or future contingent events do not qualify." *Enterprise Warehousing Solutions, Inc. v. Capital One Services, Inc.*, No. 01 C 7725, 2002 WL 406976, at *6 (N.D. Ill. March 15, 2002).

First, CCorp maintains that the statements that CCorp was able to meet performance requirements were neither false nor factual. They are statements of puffery, since they do not misrepresent existing facts that can be proven false. In support, CCorp cites *Century Universal Enterprises, Inc. v. Triana Development Corp.*, 510 N.E.2d 1260, 1273 (Ill. App. Ct. 1987), in

4

which the Court affirmed that statements that a contracting party would use its best efforts in the management and operation of the project were "mere puffery" and not actionable in fraud. However, unlike the capability to perform a service, "best efforts," are not measurable or quantifiable. CCorp also cites *Spiegel v. Sharp Electronics Corp*, 466 N.E.2d 1040, 1044 (Ill. App. Ct. 1984), where the Court affirmed dismissal of a fraud claim based on advertised statements that the copier leased by the plaintiff would make "picture perfect copies" and "reduce error and paper waste." In that case, dismissal was premised on the fact that it was not the defendant who made the statements at issue, and, that the statements were "mere commendation or opinion[.]" But in this case, FEX has alleged with specificity which CCorp employees made the statements at issue. Furthermore, the statements were not vague, general statements made to the public and involving difficult to quantify concepts; the statements at issue here involve CCorp's capability to perform certain services.

The statements alleged here are similar to those at issue in *Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 694 N.E.2d 1108, 1116 (Ill. App. Ct. 1998), where the plaintiff alleged that defendant company presented itself as an expert in environmental clean up, inducing the plaintiffs to rely on its cost estimates when it negotiated the purchase of a contaminated property. Here, FEX alleges that CCorp asserted itself to be capable of performing certain services. Even more on point is *Stenograph Corp. v. Microcat Corp.*, No. 86 C 10231, 1989 WL 99543, at *2 (N.D. Ill. Aug. 22, 1989), where the plaintiff complained of defendant's representations that it had a technical staff which was experienced, knowledgeable and competent to understand certain software systems. There, the court rejected the defendant's

argument that its statements were not fraudulent because they addressed future events. Taken as a whole, the statements

> really describe the present capabilities of [the defendant's] staff to address specific situations. Thus, the statement quoted above is not so much a description of capabilities [the defendant] is promising to develop, but rather a statement about the present ability of its staff to handle the adaptation, marketing, and support of the [] software.

*Id.* Similarly, in this case, FEX alleges that CCorp repeatedly represented "that it could properly and adequately deliver the services anticipated in the CSA and Statement of Works, including to obtain licenses for, and then design and build, and operate, the clearing and settlement infrastructure." Just as in *Stenograph*, such statements are statements about present abilities to handle certain services, and not promises of future performance. As such, they are sufficient to satisfy the pleading requirements for fraud at this stage.[2]

---

[2] Even if these statements are presumed to be promises of future action, they may still be actionable in fraud. In Illinois, promissory fraud is generally disallowed, "but there is an exception to this rule 'where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud.'" *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) (quoting *Steinberg v. Chicago Medical School*, 371 N.E.2d 634, 641 (Ill. 1977)). The exception applies where a promise is made with the intent that the promisee rely on it, and where the promisee is induced to act in reliance on the promise. *Id.* (citations omitted). It may apply where the misrepresentation at issue "was a deliberate device to induce plaintiff to enter this agreement to his detriment." *Brudnicki v. General Elec. Co.*, 535 F. Supp. 84, 88 (N.D. Ill. 1982).

> In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent-a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed. Presumably, it is this result that the Illinois rule seeks to avoid.

*Bower*, 978 F.2d at 1012 (quoting *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F. Supp.1366, 1369 (N.D. Ill.1985)).

Next, CCorp argues that FEX has pled no facts permitting the Court to infer that CCorp knew that it could not perform at the time it said it could. According to FEX, at the time CCorp was negotiating the CSA, it knew it would not be able to provide the services it would later contract to provide. In 2006, CCorp was experiencing some financial difficulties. In 2004, CCorp had lost the Chicago Board of Trade as a client, and another of its clients was not providing substantial revenue. According to FEX, CCorp requested that FEX's payments for the preliminary design study be timed to permit CCorp to meet its payroll obligations. FEX alleges that prior to the execution of the CSA, "CCorp was planning a restructure, including refocusing its business model to provide fewer services of the type required by the CSA." Both parties agree that in November 2007, less than one month after the CSA was signed, the CCorp Board of Directors resolved to restructure the company and refocus its business model. This restructuring plan was publicly announced the following month. In October 2008, ICE acquired CCorp, and the acquisition became complete in March 2009. The following month, CCorp sent a letter of termination to FEX.

Taking all facts and inferences in a light most favorable to FEX, as I must at this stage, these allegations can support an inference that CCorp knew at the time it negotiated the CSA that

---

FEX alleges that CCorp engaged in a scheme to induce FEX into entering into the CSA, to benefit itself and to the detriment of FEX (see *infra*). FEX alleges that CCorp made the statements regarding its capabilities with the intent that FEX rely on them, FEX was induced to enter into the CSA in reliance on the statements, and CCorp had no intention to fulfill its "promise" at the time it was made. The structure of the contract was such that FEX was required to make several large payments in advance of the implementation. At the time the counterclaim was filed, FEX had paid CCorp in excess of $2 million, but CCorp had not performed the implementation services nor had it obtained the appropriate license from Australian regulators. All of these allegations support FEX's claim that CCorp engaged in a scheme to induce FEX to sign the CSA.

it would not be able to perform the contracted services. Although it is not necessarily the case that the initial restructuring announced by the Board would lead to an acquisition, it certainly possible, even plausible, that as a result of CCorp's financial troubles the initial round of restructuring was a planned prelude to service cutbacks and courting possible buyers. It is true that FEX's allegations on this point are all circumstantial, however, FEX does allege with specificity the who, what, where and when of the fraud, and Rule 9(b) is relaxed upon a showing that the claimant is unable to "obtain essential information without pretrial discovery (normally of the defendant, because the essential information is in his possession and he will not reveal it voluntarily) that she could not conduct before filing the complaint." *Emery v. Amer. Gen. Finan., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). Because the essential information here is what CCorp knew at the time it made the statements - information solely in CCorp's possession - the lack of specificity on this point should not result in dismissal of the claim where circumstantial evidence appears to support FEX's claim.

CCorp also maintains that its statements about its independence were not false when made, and are therefore unactionable. There is no dispute that at the time the CSA was executed, CCorp was independent, nor does FEX allege that CCorp promised to remain independent. FEX alleges that CCorp knew but concealed from FEX that CCorp would later be acquired by ICE, an FEX competitor. The complaint further states that in October 2008 - one year after the CSA was executed - ICE announced its acquisition of CCorp, and that the acquisition was complete in March 2009. So even if CCorp did know as far back as 2006 and 2007 that it would later be acquired by ICE, that knowledge did not impact the truth of CCorp's statements at the time they were made.

In response, FEX maintains that CCorp's failure to alert FEX to the subsequent restructuring and acquisition was omission by fraud. The cases cited by FEX make clear that in order to state a claim for fraudulent concealment, the complainant must allege not only the elements of fraud and concealment, but also a duty to disclose that which was concealed. *W.W. Vincent and Co. v. First Colony Life Inc. Co.*, 814 N.E.2d 960, 969 (Ill. App. Ct. 2004); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). "[T]he duty to speak arises only when a fiduciary relationship is present or when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension." *PXRE Reinsurance Co. v. Lumbermens Mut. Cas. Co.*, 342 F. Supp. 2d 752, 757 (N.D. Ill. 2004) (citations and quotations omitted). Here FEX does not allege any fiduciary relationship, so the relevant question is whether FEX has sufficiently alleged that CCorp misled FEX on the issue of independence and intentionally failed to correct FEX's misapprehension.

According to FEX, throughout 2006 and 2007 it emphasized to CCorp the importance of clearing house independence. CCorp maintained that it was an independent entity, but in November 2007, the CCorp Board of Directors "resolved to restructure CCorp and to refocus its business model." CCorp did not tell FEX that it was planning on restructuring. This allegation, says FEX, is significant because the restructuring plan, announced in December 2007[3] "invited" the purchase of CCorp by ICE, which occurred in October 2008. FEX alleges that in the months

---

[3] Paragraph 33 of the counterclaim alleges that "In December, 2008, this restructure and refocus plan was finalized and announced." However, in its response to CCorp's motion to dismiss, FEX notes that the restructure "was publicly announced just one month after FEX and CCorp entered into the CSA." The parties do not dispute that the CSA was executed in October 2007, and the acquisition by ICE took place in October 2008; therefore, I operate under the assumption that FEX's assertion in its response is correct and that the announcement alleged in paragraph 33 should be read to have taken place in December 2007, not December 2008.

9

leading up to the announcement of the acquisition, it requested information about any potential acquisition by ICE.  Until October 31, 2008, CCorp never informed FEX of the potential for this acquisition.

In its response, FEX asserts that CCorp's restructuring "was being planned as early as 2006[;]" and it is this restructuring that culminated in the acquisition.  Although the November 2007 resolution and subsequent acquisition are not particularly strong indicators that CCorp knew in 2007 that it would be acquired by ICE, these allegations could support such an inference.  Because the issue of what CCorp knew at the time it made the statements is information solely within its possession, I find that FEX has satisfied the pleading requirements with regard to CCorp's statements that it was independent.

**B.  Count IV  - Illinois Consumer Fraud Act**

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILL. COMP. STAT. 505/1 et seq. , CCorp must plead (1) a deceptive act or practice by FEX; (2) FEX's intent that CCorp rely on the deception; and (3)  that the deception occurred during a course of conduct involving trade or commerce. *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009) (citing *Robinson v. Toyota Motor Credit Corp*., 775 N.E.2d 951, 960 (Ill. 2002)).  In a private cause of action, the claimant must allege that the deception was the proximate cause of the claimed injury.  *Zekman v. Direct American Marketers, Inc*., 695 N.E.2d 853, 860 (Ill. 1998).  CCorp moves to dismiss Count IV on the ground that it lacks any nexus to Illinois consumers and fails to implicate Illinois consumer protection concerns.

CCorp cites *Swartz v. Schaub*, 818 F. Supp. 1214 (N.D. Ill. 1993), where the court found that the ICFA "is intended to deal only with the impact of the statutorily prohibited practices on *Illinois* consumers." (Emphasis in original).  FEX is not an Illinois resident, but rather has its

principal place of business in Sydney, Australia. According to CCorp, this defeats FEX's claim. In response, FEX notes the split in authority in this district on the issue of whether a foreign resident has standing pursuant to the ICFA, citing several cases in which the court found that non-resident consumers had standing to sue based on a "more liberal" construction of the statute. *MAN Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 568, 574-75 (N.D. Ill. 1999) (collecting cases). Because the transaction at issue occurred primarily and substantially in Illinois, I find that FEX's non-resident status does not bar its ICFA claim.

In *Avery v. State Farm*, 835 N.E.2d 801, 853-53 (Ill. 2005), the Illinois Supreme Court held "that a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." See *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396-97 (7th Cir. 2009). Recognizing that there is "no single formula or bright-line test for determining whether a transaction occurs within this state[,]" the Court notes that "each case must be decided on its own facts." *Id.* at 854. In *Avery*, factors that the Court considered included (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the item that was the subject of the transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions; (7) where the deceptive statements were made; (8) where payments for services where sent; and (9) where complaints were to be directed. *Id.* at 854-855.[4]

---

[4] Interestingly, neither party cites the Illinois Supreme Court decision in *Avery*. However, because this is the most recent Supreme Court pronouncement on the law, my analysis will proceed in accordance with the standard set forth therein.

11

In this case, the contract at issue contains an Illinois choice-of-law provision and CCorp has its principal place of business in Illinois. The CSA specifies that all written communications are to be addressed to CCorp's Chicago office.[5] CCorp does not dispute FEX's assertion that CCorp "offers and performs services in Illinois." FEX alleges that several of the alleged misrepresentations were made in Illinois, or by Illinois employees of CCorp directly to FEX representatives. Based on these allegations, the circumstances related to the fraud alleged here occurred "primarily and substantially" in Illinois.

CCorp next maintains that the claim should be dismissed because it fails to implicate Illinois consumer protections. "Where a plaintiff attempts to allege a violation of the [ICFA] in a case that appears on its face to involve only a breach of contract, we must ask whether the alleged conduct implicates consumer-protection concerns." *Song*, 640 F. Supp. 2d at 1017 (citing *Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1116 (Ill. App. Ct. 1995)). According to CCorp, "FEX's counterclaim arises from FEX's unique concerns and service need and does not implicate any consumer protection concerns." But FEX's claim does not involve only a breach of contract. FEX also alleges that CCorp made several misrepresentations to FEX in order to induce FEX to execute the CSA. Misrepresentations about the quality of services being offered are "exactly the type of fraudulent activity [ICFA] is designed to address." *Sutter Ins. Co. v. Applied Systems, Inc.*, No. 02 C 5849, 2004 WL 161508, at *1 (N.D. Ill. Jan. 26, 2004) (quoting *AGFA Corp. v. Wagner Printing Co.*, 2002 WL 1559663, at *3 (N.D. Ill. July 10, 2002)); see *Hartmarx Corp. v. JBA Intern., Inc.*,

---

[5] In its earlier pleadings, CCorp maintained that FEX sent more than a thousand emails to CCorp personnel, held weekly conference calls, and wired payments to Chicago accounts, and sent executives to Chicago on three separate occasions. CCorp also maintained that substantial portions of the contract negotiation took place in Chicago.

2002 WL 406973, at *6 (N.D. ILL., 2002) (where a business consumer brings a fraud claim alleging fraudulent misrepresentations made to induce the consumer to enter into a contract, that consumer may proceed under the ICFA). CCorp does not dispute that FEX is a consumer of CCorp's services,[6] and because the counterclaim alleges fraudulent misrepresentations made to induce FEX to enter into the CSA, consumer protection concerns are indeed implicated.[7] For these reasons, CCorp's motion to dismiss Count IV is denied.

---

[6] In its opening brief, CCorp does argue that FEX is not a "consumer" under the ICFA because it did not contract for the purchase of merchandise; however, in its reply brief, CCorp withdraws this argument, noting that the statutory definition of "consumer" includes one who purchases services.

[7] My finding on this issue is consistent with the Seventh Circuit's decision in *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996). There, the Court, in the absence of an Illinois Supreme Court pronouncement on the matter, held that "claims under the [ICFA] must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise implicate consumer protection concerns." In support of its holding, the Court cited *Lake County Grading Co. v. Advance Mechanical Contractors, Inc.,* 654 N.E.2d 1109, 1115-16 (1995); *Scarsdale Builders, Inc. v. Ryland Group, Inc.*, 911 F. Supp. 337, 340 (N.D. Ill.1996); and *Web Communications Group, Inc. v. Gateway 2000*, Inc., 889 F. Supp. 316, 323 (N.D. Ill.1995). As two decisions from this district point out, the cited cases concern "non-consumer" businesses. *Hartmarx*, 2002 WL 406973, at *7; *Lefebvre Intergraphics v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1368-70 (N.D. Ill. 1996). *Athey* itself did not involve consumer businesses. The Illinois Court of Appeals has held that "where the dispute involves two businesses who are not consumers," the alleged conduct must involve "trade practices addressed to the market generally or otherwise implicate[] consumer protection concerns." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989); see *Century Universal Enter., Inc. v. Triana Dev. Corp.*, 510 N.E.2d 1260, 1270 (Ill. App. Ct. 1987) (disputes between business men, "who are not consumers of each other's goods or services" do not fall within the scope of the ICFA). Because the parties do not dispute that FEX is a consumer of CCorp's services under the ICFA, and because FEX alleges fraudulent misrepresentation separate from the contract, consumer protection concerns are implicated and the standard set forth in *Athey* is satisfied.

## IV.  CONCLUSION

For the foregoing reasons, CCorp's motion to dismiss Counts I & IV is denied.  Because I find that FEX's fraud claims have been adequately pled, CCorp's motion to strike FEX's affirmative defense of fraud is denied.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE:  July 16, 2010